# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY STETTER, | Civil Action No. 2: 15-cv-1430 |
| Petitioner, | United States Magistrate Judge |
| v. | Cynthia Reed Eddy |
| JAMES ECKERT, Warden; DISTRICT ATTORNEY OF ALLEGHENY COUNTY, and THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, | |
| Respondents. | |

## MEMORANDUM OPINION[1]

Before the Court is the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner, Jeffrey Stetter ("Petitioner" or "Stetter"). Stetter is currently incarcerated in the State Correctional Institution in Huntingdon, Pennsylvania. For the reasons that follow, the Petition will be dismissed and a certificate of appealability will be denied.

### Relevant and Procedural Background

Stetter is challenging the judgment of sentence imposed upon him by the Court of Common Pleas of Allegheny County on November 2, 2009. Stetter, in a non-jury trial before Judge Donald J. Machen, was convicted on the charges of burglary, robbery, and criminal conspiracy stemming from a home invasion / robbery which occurred on September 18, 2005.[2]

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of a final judgment. *See* ECF Nos. 9 and 21.

[2] Stetter's co-defendant, George Maxwell, was also found guilty of robbery, burglary, and criminal conspiracy.

1

Stetter waived his right to a pre-sentence report and proceeded to sentencing following the verdict.

The factual and procedural history of this case are detailed in the Superior Court's memorandum affirming Stetter's conviction. *Commonwealth v. Stetter*, No. 711 WDA 2010, 30 A.3d 538 (Pa. Super. Ct. May 13, 2011) (unpublished opinion) (ECF No. 12-2). The evidence at trial is summarized as follows: the victim, Richard Sharp, testified that he was with Stacy Bulford on September 18, 2005, in his trailer. He admitted on cross examination that Bulford was a prostitute and he was paying her to be with him that night. Sharp testified that he left his home around 8:00 PM that evening and returned at approximately 9:30 PM. Upon his return, when he entered the trailer, he was struck by an unknown assailant. He fell to the ground and his waist pack was taken from him. The two assailants fled the scene after the attack. Sharp called 911, resulting in the police's arrival upon the scene, and due to the severity of his injuries, he was taken to a nearby hospital for treatment. Sharp testified that he had brought Bulford to the trailer and paid her for sex, and he had done so with other women, including Mary Laurence. N.T. 11/09/09 at 21-22, 24. He also testified that after police had identified Bulford as a possible accomplice, Bulford identified Stetter and Maxwell as the two men who had assaulted him.

Bulford testified that she was in the trailer when Sharp was attacked. According to Bulford, sometime after Sharp left, Mary Laurence entered the trailer and told Bulford "not to worry about what I'm about to see." N.T., 11/2/09 at 29. Laurence left the trailer and Bulford went to sleep. She was awakened by the noise and flicked on a light, enabling her to see Stetter and Maxwell. She admitted that she never tried to help Sharp and never emerged from the bedroom. Bulford confirmed that initially she told police that she was in the bedroom and did not

see anything. A couple of months after the incident, however, Bulford identified Stetter and George Maxwell as the two individuals who entered Sharp's trailer and assaulted him.

The final eyewitness to testify was Mary Laurence. Laurence was a co-defendant with Stetter and Maxwell and was charged with burglary and conspiracy. Without objection, her case was severed from Stetter's and Maxwell's trial. N.T. 11/2/09 at 2. She testified under an agreement of probation in exchange for her testimony against Stetter and Maxwell. Laurence acknowledged that she prostituted herself to Sharp. Laurence testified that she, Stetter, and Maxwell had been smoking crack cocaine in a car on September 18, 2005. N.T. 11/2/09 at 48. They needed more money, and Laurence told Stetter and Maxwell she would ask Sharp for money. N.T. 11/2/09 at 49. The group went to Sharp's trailer, but they left because he was not home. A short time later, the group returned to the trailer. Laurence testified that she remained in the car and did not go into the trailer, but that Stetter and Maxwell went inside to talk to Bulford. Approximately 30 minutes later, Stetter and Maxwell returned to the car. She noticed that Maxwell was carrying a "belly bag." N.T. 11/2/09 at 52. The men informed her that Bulford had invited them into the trailer for couple of beers and that at some point, Bulford said, "Here comes Rich," she then turned off the lights and directed them to hide. N.T. 11/2/09 at 53.

Also testifying for the Commonwealth was Detective Friburger, who responded to the 911 call on September 18, 2005, at approximately 9:30 p.m.

The defense put forth no witnesses.

Stetter waived his right to a pre-sentence report and proceeded to sentencing. The Commonwealth invoked the mandatory minimum sentence pursuant to 42 Pa. C.S. § 9714 as Stetter had a prior conviction for robbery. The trial court rejected counsel's request for Stetter to be sentenced concurrently with the sentence of five (5) to ten (10) years he was then serving at

3

criminal information 200606819 and a sentence of seven (7) to fourteen (14) years he was serving at criminal information 200806982.[3] Instead, the trial court sentenced Stetter to ten (10) to (20) years imprisonment at the burglary conviction (Count One) to run consecutively to the sentences he was serving. No further penalty was imposed on the remaining convictions.

Stetter appealed his conviction and sentence to the Superior Court of Pennsylvania. The appeal challenged the sufficiency of the evidence, the weight of the evidence, and the fact that the sentence was imposed consecutively rather than concurrently. His conviction and sentence were affirmed on May 11, 2011, and the Supreme Court of Pennsylvania denied review by order dated March 1, 2013. (ECF No. 12-3). Stetter did not seek review with the Supreme Court of the United States.

Unsuccessful on direct appeal, on May 22, 2014, Stetter filed a *pro se* petition for collateral review under the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 - 9546, in which he raised the following four (4) grounds for relief, which are reproduced verbatim:

> 1. The Court erred in sentencing Defendant to a mandatory 10-20 years pursuant to 42 Pa.C.S., sec. 9714(a)(1) and the prosecutions request for same.
>
> 2. MARY LAURENCE wrote Defendant in 2012 that she desired to help him reduce his sentences by confessing she had committed perjury against him at trial and why.
>
> 3. STACY BULFORD confessed to 2 people, post-trial, that she was a participant in robbing the victim and that she had lied in identifying Defendant and why.
>
> 4. Trial counsel was ineffective in failing to establish facts establishing BULFORD had committed perjury to credit her identifications of the accused.

---

[3] Stetter was sentenced at these criminal informations on June 2, 2009. The sentences were to run concurrently with one another. See ECF No. 12-1 at 46.

PCRA Petition (ECF No. 12-3 at 32). Robert Carey, Jr., Esquire, was appointed to represent Stetter. On August 27, 2014, Attorney Carey filed a "no merit" letter and requested to withdraw from the case. (ECF No. 12-3). On September 2, 2014, Judge Machen granted the request to withdraw and issued a Notice of Intent to Dismiss the PCRA petition without an evidentiary hearing. On September 30, 2014, Stetter filed a *pro se* response to the notice of the court's intent to dismiss. By ordered entered October 7, 2014, Judge Machen dismissed Stetter's PCRA petition.[4]

On November 13, 2014, Stetter filed a *pro se* notice of appeal. Due to the retirement of Judge Machen, the case was assigned to Judge Joseph K. Williams, III. Judge Williams issued a Pa.R.A.P. 1925(a) opinion on February 11, 2015. (ECF No. 12-4).

Stetter raised the following ineffective assistance of counsel claims on appeal, which are reproduced verbatim:

> 1. P.C.R.A. counsel was ineffective for failure to raise trial counsel's ineffectiveness, for failure to object to trial court's application of 42 Pa.C.S. 9714 in sentencing Petitioner to a mandatory minimum of 10-20 yrs. Layered ineffective assistance of counsel, where counsel failed to object to the Court "error" in sentencing.
>
> 2. Ineffective assistance of appeal counsel, counsel failed to investigate after-discovered evidence of commonwealth's key witness perjured testimony.
>
> 3. Trial counsel was ineffective for failing to unequivocally establish facts at trial which would have prove the commonwealth's key testified falsely.
>
> 4. Ineffective assistance of counsel for failing to investigate the witness's and the alleged co-conspirator, Mary Laurence.

---

[4] Judge Donald J. Machen presided over Stetter's trial and the initial PCRA proceedings. *See Commonwealth v. Ligons*, 971 A.2d 1125, 1140 (Pa. 2009) (noting in passing "that the PCRA judge . . . [is] oftentimes . . . the same judge who presided over the petitioner's trial").

Superior Court Opinion, 10/22/2015 at 7-8 (citing Appellant's Brief at 1,5). (ECF No. 12-5). On October 22, 2015, the Superior Court of Pennsylvania affirmed the PCRA order. Stetter did not seek further review.

Having been denied relief in state court, on October 28, 2015, Stetter filed in this Court a *pro se* habeas petition and brief in support.[5] (ECF Nos. 4 and 6). The Court is somewhat hampered in identifying the grounds on which Stetter seeks habeas relief because in his Petition Stetter does not identify any ground and does not identify any supporting facts. *See* Petition, No. 12 at pgs. 6 - 9. (ECF No. 4). Rather, Stetter states "See attached." However, nothing attached to the Petition identifies the grounds on which Stetter seeks habeas relief. With that said, Page (V) of Stetter's Brief (ECF No. 6) lists the following "Questions Asked," which are repeated verbatim:

> (1): DID SUPERIOR COURTS AFFIRMANCE OF COMMONWEATHS DENIAL OF PETITIONER P.C.R.A. VIOLATE PETITIONERS 14TH AND 6TH AMENDMENTS. WHEN SUPERIOR COURT ABANDONED IT'S LONG HELD STANDARD WITH 42 Pa C.S. 9714(d) "MANDATORY SENTENCING". THUS CAUSING A MISCARRIAGE OF JUSTICE AND A VIOLATION OF PETITIONERS EQUAL PROTECTION TO ENSUE.
>
> ANSWER: IN THE ALTERNATIVE
>
> (2): DID SUPERIOR COURT ABUSE IT'S DISCRETION WHEN THEY AFFIRMED LOWER COURTS DECISION FINDING TRIAL COUNSEL WAS EFFECTIVE FOR NOT OBJECTING TO ERRONEOUS SENTENCING UNDER 42 PA.C.S. 9714(d). THUS VIOLATING PETITIONERS 14TH AND 6TH AMENDMENTS CAUSING A MISCARRIAGE OF JUSTICE AND A VIOLATION TO HIS EQUAL PROTECTION BY LAW.
>
> ANSWER: IN THE AFFIRMATIVE

---

[5] Stetter's habeas petition is docketed as filed on November 2, 2015. However, the petition reflects that Stetter placed the petition in the prison mailing system on October 28, 2015. Pursuant to the prison mailbox rule, the petition is deemed filed on the date it is placed in the hands of prison authorities for mailing.

(3): DID SUPERIOR COURT ABUSE IT'S DISCRETION BY AFFIRMING LOWER COURTS DECISION THAT TRIAL COUNSEL AND APPEAL COUNSEL'S WERE ALL EFFECTIVE FOR FAILING TO INVESTIGATE AFTER DISCOVERED EVIDENCE. THUS, VIOLATING HIS 14TH AND 6TH AMENDMENTS AND EQUAL PROTECTION OF THE LAW. ALLOWING A MISCARRIAGE OF JUSTICE TO ENSUE AS WELL.

ANSWER: IN THE AFFIRMATIVE.

Respondents filed a timely Answer (ECF No. 12), to which Stetter filed a reply brief (ECF No. 19). The matter is fully briefed and ripe for disposition.

B. **Standard of Review**

Because it is not contested that each of Stetter's claims was adjudicated on the merits by the Superior Court of Pennsylvania, review of his claims is subject to the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"). Under AEDPA, habeas relief is unavailable unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254.

A decision by a state court is "contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth" in United States Supreme Court precedent. *Price v. Vincent*, 538 U.S. 634, 640 (2003). (quotations and citations omitted). A state court need not have cited any particular Supreme Court decisions, and this standard affords considerable latitude to the state court, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. *Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam). In this regard, the state court's decision need not even be accompanied by an explanation, as long as

there was a "reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

However, "when the state court pens a clear, reasoned opinion, federal habeas courts may not speculate as to theories that 'could have supported' the state court's decision. *Dennis v. Sec'y, Pa. Dep't of Corrs.*, 834 F.3d 263, 283 (3d Cir. 2016) (en banc). If the state court does provide reasoning, the state court decision is not entitled to deference if no "fairminded jurist []" could "disagree that those arguments or theories are not consistent with the holding in a prior decision of" the Supreme Court. *Richter*, 562 U.S. at 102. The state court may not add or remove a factor from a clearly established federal law test. *Dennis*, 834 F.3d at 307.

Petitioner's claims will be reviewed with these standards in mind.

**C.** **Discussion**[6]

In essence, each of Stetter's claims is an ineffective assistance of counsel claim, which requires the petitioner to establish (i) constitutionally deficient representation, and (2) the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong of counsel ineffectiveness,

> a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

---

[6] The first consideration in reviewing a federal habeas petition is whether the petition was timely filed under AEDPA's one-year limitations period. 28 U.S.C. § 2244(d). Respondents concede that the instant petition was timely filed. Ans. at 6. (ECF No. 12).

*Id.* at 694.  In addition, although a petitioner must satisfy both prongs to succeed on his ineffectiveness claim, the Supreme Court noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697.

The United States Court of Appeals for the Third Circuit has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to *Strickland*. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *see also Commonwealth v. Pierce,* 527 A.2d 973, 976 (Pa. 1987) (expressly stating that Pennsylvania follows the *Strickland* standard of review). Thus, the relevant question is here is whether the decisions of the Superior Court of Pennsylvania involve an unreasonable application of *Strickland*. *Jacobs v. Horn*, 395 F3d 92, 106 n.9 (3d Cir. 2005).  That is, a petitioner must show that the state courts "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

When resolving an ineffectiveness of counsel issue, the question is not whether the defense was free from errors of judgment, but whether defense counsel exercised the customary skill and knowledge that normally prevailed at the time and place. *Strickland,* 466 U.S. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and ha[s] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms'." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 699).

Petitioner's claims will be addressed seriatim.

## Claim One[7]

In his first claim, Stetter challenges the sentencing court's application of 42 Pa.C.S. § 9714 in sentencing him to a mandatory minimum sentence of ten (10) to twenty (20) years. Stetter maintains that the sentencing court had insufficient evidence of his prior criminal history as is necessary under section 9714(d) and that trial counsel was ineffective for not objecting to the "erroneous sentencing."[8] This same claim was raised on collateral review and was rejected by both the PCRA court and the Superior Court.

As the PCRA court noted, at Stetter's sentencing hearing it was revealed that Stetter had a prior conviction for robbery, a felony of the first degree. It was this previous conviction that the Commonwealth used as its foundation for seeking the mandatory minimum of 10 years pursuant to Pennsylvania's "second strike" sentencing provision[9]:

> The present crime of violence was committed on September 18, 2005. So, this date is the cut-off date for any prior convictions. The Court has reviewed the entire record and, unfortunately, the sentencing guideline form is not part of the court papers. Despites its absence, the record still shows, by circumstantial evidence, that his prior crime of violence happened before September 18, 2005. At sentencing, the prosecutor told the Court that defense counsel knew that upon conviction the 10 year mandatory would be sought. Transcript, pg. 70. The post-sentence motion filed after sentencing referenced the 10 year mandatory but its focus was on the Court's exercise of discretion and not some infirmity associated with the mandatory. The absence of argument informs this Court that Stetter was adjudicated guilty of his prior crime of violence before Sept. 18, 2005.

---

[7] Ground One and Two as identified in Stetter's brief (ECF No. 6) overlap and thus will be combined for this analysis.

[8] In his Reply Brief, Stetter states "Counsel for defendant was ineffective for not objecting to this [violation of 9714(d)] occurring and also protect defendant rights at a minimum ask for a postponement so the records could be found and corrected." (Reply Brief at 5, ECF No. 19).

[9] 42 Pa.C.S. § 9714(d) provides that "[t]he sentencing court, prior to imposing sentence on a offender under subsection (a) [mandatory sentence provision], shall have a complete record of the previous convictions of the offender . . . ."

A clear inference from reading the sentencing transcript is that Judge Machen received information about the prior matter. However, those documents are not part of the Clerk of Courts file. However, this Court will take judicial notice of the contents of case #CP-02-CR-10828-1991. See, Pa.R.E. 201(f) ("[j]udicial notice may be taken at any stage of the proceeding."); *Commonwealth v. Tau Kappa Epsilon*, 609 A.2d 791 (Pa. 1992). On April 6, 1992, Stetter entered into a guilty plea to a felony-one robbery wherein he received a sentence of 2 to 5 years. By every indication, this 1991 matter is the prior, predicate crime of violence that triggered the application of the 10 year mandatory.

. . .

His other complaint is that the Court did not require the government to provide proof of the "first strike conviction". The factual record tells a totally different story. Defense counsel knew about the prior conviction and how it would serve as a predicate to the imposition of the mandatory. The trial court received the guidelines from the prosecutor. Transcript, pg. 69. A short time later, the Court reviewed what precisely the government was asking for. "So because of a prior robbery, the burglary now, you're invoking the mandatory?" Transcript, pg. 71. The record also shows that there was no objection from defense counsel about the prior. The absence is supportive of the Court's conclusion that the government did, in fact, discharge its burden of proof regarding the prior conviction.

PCRA court Opinion, 2/11/2015, at 7-8 (ECF No. 12-4).

In its Opinion affirming the PCRA court's decision, the Superior Court quoted extensively from the PCRA decision. It also noted that "[t]he Commonwealth agrees that the first degree felony robbery at Criminal Information No. CC 199110828, to which Appellant pled guilty on April 6, 1992, was the prior crime of violence that resulted in the mandated ten-year minimum sentence for the instant burglary." Superior Court Opinion, 10/22/2015 at 11. (ECF No. 12-5). The Superior Court agreed with the PCRA court's conclusion that there was sufficient evidence of record to establish Stetter's prior conviction for a violent crime as required under section 9714. Accordingly, it found that because the underlying claim lacked arguable merit, Stetter's claim for ineffective assistance of counsel failed.

This Court finds that the decision of the Superior Court easily withstands AEDPA review. Stetter's first claim fails under *Strickland* as counsel cannot be found ineffective for failing to raise a meritless claim.

Claim Two[10]

In his second claim, Stetter claims that his PCRA counsel rendered ineffective assistance of counsel for failing to investigate "after-discovered evidence." Specifically, Stetter claims that PCRA counsel "had a duty to investigate" and should have investigated a letter that Mary Laurence wrote to Stetter in 2012, rather than filing a "no merit" letter. *See* Pet. Br. at 6, 7. (ECF No. 6). The letter is attached to Stetter's PCRA petition and reads in pertinent part as follows:

> Also, we're gonna do whatever we gotta do to get your sentence changed! I swear to God if I gotta do some time for perjury I will! I'll do whatever it takes to get you outta there. It's only like a yr. for Perjury. I lied-n-said whatever my attorney told me to say or else he said I was getting at least 10-20 years that Day! So you just let "Da Baby" know what Daddy needs me to do and I got you!! . . . Jeff, I Love You so much and wanna spend the rest of my life in your arms! I Love You! Your, Mary.

*See* Laurence Letter at ECF No.12-3, at 43. In his no-merit letter, counsel stated:

> The Defendant cannot present a valid after discovered evidence claim based on Ms. Laurence's recantation. The Defendant cannot establish that the statements attributed to Ms. Laurence would compel a different result. The letter claims that Ms. Laurence followed her attorney's instructions to avoid a 10 to 20 year sentence is cumulative of the evidence produced at trial. Ms. Laurence was charged as a co-defendant and acknowledged at trial that she was offered lenience in exchange for her testimony. Trial Transcript, November 2, 2009, at 53-54. Due to the other evidence presented at trial, the Defendant cannot establish that Ms. Laurence's recantation would compel a different result. Ms. Laurence testified that the Defendant was in the trailer at the time of the attack. Id. at 53. The victim testified that he was assaulted by two men and Stacy Bulford testified that she saw two men, including the Defendant running from the trailer. Id. at 11-

---

[10] For ease of analysis, the Court as divided Stetter's Ground Three, as identified in his brief (ECF No. 6) into two parts: the first part addressing the "after-discovered evidence" as it relates to Mary Laurence and the second part addressing the "after-discovered evidence" as it relates to Stacy Bulford.

12

> 13, 30. Importantly, Ms. Laurence is deceased. She is unavailable to appear at an evidentiary hearing and explain the meaning of this letter. Due to her passing, the trial court cannot assess the credibility of the proposed recantation. Ultimately, this claim fails given the case presented by the Commonwealth because there is nothing in this letter to overcome the trial testimony and compel a different result.

Counsel's No-Merit Letter, 8/27/2014. (ECF No. 12-4 at 8). The PCRA court found that counsel adequately addressed the matter in his "no merit" letter and the Superior Court affirmed, finding that Laurence's letter vaguely states that she lied, but does not specify the content of her alleged fabricated testimony.

There is a fundamental problem with this claim on federal habeas review. A claim of ineffective assistance of PCRA counsel is not cognizable in a federal habeas corpus petition. *See generally* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). As the United States Court of Appeals for the Third Circuit explained in *Hassine v. Zimmerman,* 160 F.3d 941 (3d Cir. 1998):

> [t]he federal courts are authorized to provide collateral relief where a petitioner is in state custody or under a federal sentence imposed in violation of the Constitution or the laws or treaties of the United States. 28 U.S.C. §§ 2254, 2255. **Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.**

*Id*. at 954 (internal citations omitted) (emphasis added). *See also Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) ("[A]lleged errors in collateral proceedings are not a proper basis for habeas relief from the original conviction."). Accordingly, Stetter's ineffective assistance of PCRA counsel claim must be dismissed on the ground that this claim is not cognizable on federal habeas review.

13

Even if Stetter's claim was cognizable in this federal habeas case, it would be denied. Because the state court denied the claim on the merits, this Court's review of it would be governed by AEDPA's standard of review. Reviewing Stetter's claim through AEDPA's deferential standards of review, the Court would conclude that the claim has no merit. The Superior Court agreed with the PCRA court that it was not likely that the letter would compel a different verdict. The Superior Court noted that Laurence admitted on cross examination that she had a history of convictions for crimes that involved dishonesty or false statements and that she used aliases before. Further, the Superior Court concluded that because Laurence was deceased and, therefore, unavailable, "coupled with the vague nature of the content contained in her letter," the letter was "insufficient to establish that the recantation testimony would likely compel a different result." For these reasons, the Superior Court found that the underlying assertion lacked merit and Stetter had failed to establish a claim of ineffective assistance of counsel.

This Court finds that the decision of the Superior Court easily withstands review under AEDPA. Stetter has not demonstrated that the Superior Court's decision was an unreasonable application of *Strickland* as counsel cannot be found ineffective for failing to raise a meritless claim. For this additional reason, Stetter's claim will be denied.

## Claim Three

In his third and final claim, Stetter argues that his PCRA counsel rendered ineffective assistance of counsel when he failed to investigate after-discovered evidence pertaining to Stacy Bulford. Specifically, as with Claim Two, Stetter claims that PCRA counsel "had a duty to investigate" and should have investigated the issue rather than filing a "no merit" letter. *See* Pet. Br. at 6-7. (ECF No. 6). As with the other two claims raised in this habeas petition, the claim

was raised on collateral review and rejected by both the PCRA court and the Superior Court. For the reasons explained *supra*, this claim, as with Claim Two, must be dismissed on the ground that this claim is not cognizable on federal habeas review.

As with Claim Two, even if Stetter's claim was cognizable in this federal habeas case, it would be denied. Because the state court denied it on the merits, this Court's review of it would be governed by AEDPA's standard of review. Reviewing Stetter's claim through AEDPA's deferential standards of review, the Court must conclude that the claim has no merit.

At issue are statements Stetter contends Bulford made to John Stenger and Donny Ukalettie:

> Petitioner made an after-discovered evidence on commonwealth key witness Stacy Bulford, she made statements to two men who she was trying to buy drugs from that she lied about everything and that the police forced her to do so and so did Mr. Sharp who was supporting her drug habit. These two men informed petitioners brother what was said and stated to him that they would testify to this, petitioner brother then notified this petitioner of these events taken place.

Superior Court Opinion, 10/22/2015, at 14 (*citing* Appellant's Brief at 6). (ECF No. 12-6 at 3).

In his no merit letter, PCRA counsel stated that the claim lacked merit:

> This claim lacks merit because it is not valid after discovered evidence under the PCRA as the new evidence is solely intended to attack Ms. Bulford's credibility. . . . . During the course of my representation of the Defendant, I have been unable to make contact with any of the proposed witnesses, William Stetter [Petitioner's brother], John Stenger, and Donny Ukalettie.

No Merit Letter, 8/27/2014 at 10 (ECF No. 12-4 at 9). The Superior Court agreed with the PCRA court's determination that the proposed testimony was not valid after-discovered evidence because it was an attack on Bulford's credibility. Additionally, the Superior Court found that because counsel was unable to make contact with any of the witnesses, the veracity of Stetter's assertion could not be confirmed and, thus, amounted to no more than Stetter's unsupported

15

statement. For these reasons, the Superior Court found that because the underlying claim lacked merit, Stetter had failed to establish a claim of ineffective assistance of counsel.

This Court finds that the decision of the Superior Court easily withstands review under AEDPA. Stetter has not demonstrated that the Superior Court's decision was an unreasonable application of *Strickland* as counsel cannot be found ineffective for failing to raise a meritless claim. For this additional reason, Stetter's claim will be denied.

### D. Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. Applying those standards here, the Court concludes that jurists of reason would not find it debatable whether each of Stetter's claims should be dismissed. Accordingly, a certificate of appealability will be denied.

### E. Conclusion

For all of the above reasons, the petition for a writ of habeas corpus will be dismissed and no certificate of appealability will be issued.

Dated: May 9, 2018

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: JEFFREY STETTER
JC-0232
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16654-1112
(via U.S. First Class Mail)

Cory J. Schuster
Ronald M. Wabby, Jr.
Office of the District Attorney
(via ECF electronic notification)